Good morning and welcome to the Ninth Circuit. We have a few matters that have been submitted today which I'll state for the record and then we'll proceed to our one argument. So submitted on the briefs this morning are Jimenez Corona v. Garland, Case 21-38, Ramos-Sanchez v. Garland, Case 21-393, Garcia-Rojo v. Garland, Case 21-624, and then we have two cases that have been deferred for submission which we'll deal with on a later date. So for the one case that we're having argument in this morning, United States v. TKW Limited Partnership et al. Looks like yes. Okay. Yes, Your Honor. Very good. And so then I think Ms. Wolitzer, you are going to, no, I'm sorry, Mr. Sweeney, you start off. Thank you, Your Honor. It pleases the court. We're here on behalf of defendant appellate and asking that this court overturn the ruling for motion for summary judgment or the alternative reverse and remand based on equity for monies that were spent on the property as outlined in our briefing. So our position that there's error in granting the motion for summary judgments. There's a number of issues we've raised. First, that Washington courts do not recognize the nominee theory and even if they had, there's still issues of fact, multiple genuine issues of fact that should prevent summary judgment here, particularly when the issue deals with intent, the taxpayer, as is the case here. And we'd argue that those issues of fact should have resulted in a hearing for defendant appellate rather than grant of motion for summary judgment. And in the and credit for those based on equity and reverse for findings of fact on that issue that as we pointed out in our briefing, we're not made here. Counselor, even though Washington does not recognize the nominee theory, the district court found in the alternative. So issues of material fact that should have gone to a hearing on on that issue itself too. Okay. What are, what are the material issues of fact? Correct. Yeah. What, what are they? Oh, well, the, the, the intent of the taxpayers, um, that these trusts were set up, we believe this trust were set up for proper purposes. The trust were administered correctly, um, is to those issues as to the intent. Uh, so the intent questions I think came down to two things. One is there's the question about, uh, their intent as of about 1996, 1997, where they say this was before they developed their theory that they didn't owe any taxes at all. And then there's the, then there's the, um, the questions of, I think, uh, setting up things around 2013 or so, uh, where they say they, they did this for, uh, inheritance purposes and the district court dismissed those and said that they were self-serving and lacking in any detail. So where's the error here that, that those, that we don't believe those declarations should have been dismissed as self-serving and conclusory, um, and that there could have been further evidence developed at hearing, um, as to the statements in those declarations. What, what additional evidence would be developed that you didn't have access to when those affidavits were submitted? Well, I don't know the way we didn't have access to that information. That's a good point. We, but the information was not contained in the declarations, um, and potentially could have been better done or further developed. Um, and that's true with the deposition testimony too, I guess. Um, but, but no, I'm not saying we didn't actually have access to that information at the time. Well, that would seem to be somewhat fatal here because if the information was fact, wouldn't it need to be in that declaration? How, how is it the district court is supposed to wave its hands over the possibilities of issues of fact if, if the specific fact isn't brought forward? I understood your honor. And I think we would just disagree that the declarations themselves were conclusive, conclusory. Um, we do think the declarations presented issues of fact, um, on their face. When you say they didn't have access to the information, how can that be? These are your clients. I think he said they did have access. Maybe I misunderstood you. No, no, your honor. We, I'm not saying we would not have had access to the information at the time. They were our clients. Um, and, and I'm not disputing that we would have had to add that access. Okay. So you did have access. You just didn't provide the information, but now you want to have provide the information of the district courts ruled against you. The information was not contained in the declarations or additional facts. I mean, our, our position I think is that one that our position would be that the declarations themselves, uh, did contain genuine issues and material facts. Uh, so we would dispute that. But then second, that additional information could have been adduced at hearing, uh, was my second point there. It was not in the declarations, but yeah, it's not that we would not have had access to that. Do you want to reserve the rest of your time? I, I, I would waive unless there's further questions. All right. We'll hear from the government council. You're still on mute. Thank you, Your Honor. I apologize. Uh, thank you, Your Honor. Uh, good morning. May it please the court. I'm Rachel Wolitzer representing the appellee of the United States. Uh, I'd like to clarify that, uh, the government raised three theories in this case, the nominee theory, the alter ego theory, and the fraudulent conveyance claim. And the government only has to prevail on one of these theories in order to have its tax liens foreclosed on the properties at issue. And if the court, uh, agrees that the government is entitled to prevail on any one of these theories, then, um, the court does not need to reach the other two. I'd like to start with alter ego, um, because the, uh, appellants have completely waived, uh, this issue. Um, we pointed out in our answering brief that they had not developed this issue in their opening brief. Um, they maybe had a sentence or two stating the standard, but they did not apply the facts to the law or, or otherwise develop the argument on the alter ego. And their reply failed to dispute our argument that they waived the alter ego claim. So the simplest way to dispose of this case would be to hold that they, um, waived the alter ego issue. And, um, Counsel, the, the district court, uh, seemed to think that, uh, that nominees and alter ego tests where there was a great deal of overlap. Um, and, um, so that it would seem that if they, if they address the factors on the nominee, that would, I think they're probably right. There probably is a great deal of overlap between that and the alter ego. So it's not like they've really abandoned everything. They, they really have, they have discussed things in fact, even if they didn't frame it in that way. Well, they do seem to be hanging their hat, your Honor. Um, to a large degree on the fact that Washington hasn't had any cases, um, holding that, uh, a party holds property for In that sense, the alter ego, um, the alter ego doctrine becomes more relevant. And, uh, even on the merits, aside from the waiver issue, um, it, the, the elements, as you say, which overlap with the nominee elements are fulfilled. So the first element is that the taxpayer in this case dominated and controlled the nominees, which is very clear from the record. Um, there really isn't any need to resort to intent on this issue. Uh, it's so clear from the taxpayers complete control, uh, over T and K, uh, and TKW. They created these partnerships. They were the general partners of these partnerships, which with complete authority over the conduct of their business, they were the, um, part, part owners of the partnerships and the other, uh, parts of the ownership of the partnerships were all their family trusts and their children's trusts. So they dominated and controlled these entities. They had control over their checking accounts and, um, the Thomas Weathers, um, took out mortgages on these properties, even after they were transferred to the nominees. So the control issue is, is very well established. And then on the alter ego, the other element being the corporate form has been intentionally used to violate or evade a duty. Um, the Weathers has placed title to these properties in the names of the, in the names of the alter ego companies, um, before incurring millions and millions of dollars in liabilities. And they're, they were criminally convicted of placing title in the names of these companies in order to evade their taxes. They were convicted of tax evasion. They were convicted of, um, the, uh, the mortgages were also figured in their criminal indictment and they were convicted of willfully failing to file returns for a number of years. And then they incurred, as I said, millions of dollars in tax liabilities for the years 1998 and 2011 and, and an additional 100,000 or so for 1996. So they did fail to pay their 1996 liabilities as well. The fraudulent transfer theory is also a solid, very solid theory and the district court correctly ruled on this. Now again, even though, um, it does require under the statute an actual intent to hinder, delay or defraud any creditor of the debtor, the actual statutory factors that are in the, the Washington, uh, fraudulent transfer statute involve mostly the conduct of the transferor, the taxpayer in this instance. So yes, the, the standard is actual intent, but because as I, a case that I often like to quote, the Richardson case in the sixth circuit, it is the rare taxpayer who announces to the world his intent to defraud the United States government. So... Well, that's true, but that, I guess counsel is saying that could raise a factual issue here. Right, but... What, what is your response to his argument on the affidavits being summarily dismissed? Well, just, um, first of all, I'd like to point out because the Washington legislature has been so good as to enumerate 11 factors to be applied and considered in determining intent, and most of those factors involve, uh, the object of conduct of the transferor, it isn't really necessary to probe the mind of the transferor because these factors assist in that inquiry. And as far as summary judgment goes, um, the, the appellants still have the duty to establish that no reasonable fact finder could find that the appellants were not the taxpayer's nominees, alter egos, or fraudulent transferees. So they, they aren't completely absolved of any duty by virtue of being the non-movement. The non-movement has a duty to, uh, present specific non-conclusory detailed, uh, facts to show the existence of a genuine issue of material fact. And as Judge McEwen pointed out, well, uh, couldn't they have done that or could they have done that in their declarations? And as counsel admitted, yes, they could have, uh, because they, they were the clients and they had access to the facts, but they didn't. And the district court found that they didn't. And, and I can tell you the declarations say on the issue of, well, uh, there was a lack of consideration for these transfers. Their declarations simply repeated a number of the declarants repeated over and over. They were for estate planning purposes with no detail about what was this estate plan? Um, who advised them about it? Uh, when did they come up with it? Nothing, nothing, no detail, no, totally self-serving, totally conclusive, conclusory, um, no specifics. And those type of declarations are simply insufficient to create a genuine issue of material fact, um, to the factors on fraudulent transfer really quick. The transfer was to an insider because of the close relationship between the, the partnerships and the Weathers'. Um, the transfer retained possession or control after the transfer. The, uh, appellants have completely failed to address these mortgages that, that these sham mortgages, they, they admit that they were sham mortgages that, uh, the tax that, um, Thomas Weathers placed on the properties after he had already transferred them to the partnerships. So that's how he's exercising control over the properties and over the partnerships by using them to, uh, place these mortgages on the properties. Um, and the value of the consideration, a very key point in fraudulent transfer analysis was not reasonably equivalent to the value of the assets transferred because the Weathers' has received absolutely no money in, in exchange for the transfer of these properties. So that is a transfer was insolvent or became insolvent shortly after the transfer. So the Weathers' transferred all of these properties and then stopped paying their taxes. Well, failure to pay your liabilities when due is by definition insolvency. So they transferred all this property out of their name beyond the reach of the IRS. And then they started incurring millions and millions of tax liabilities. Um, the nominee factors are very similar to the helpful. Uh, you're looking at the totality of the evidence, um, and all of these theories. And, uh, as far as the counterclaim goes, um, PPM has really tax lien. Excuse me. And in fact, it's already paid the expenses. And if the expenses have been paid, there's no longer a liability or a lien that could take precedence over the federal tax lien. And, um, in addition, there's been no waiver of sovereign immunity that would allow PPM to prevail on a counterclaim against the United States. And even though they try to frame it as a set off, the United States doesn't have any claims against PPM because, um, the district court ruled against the United States on its nominee claims against PPM. And there is nothing for PPM to set off against. And so sovereign immunity also precludes PPM's counterclaims for these expenses. I'd like to get back, uh, just to make absolutely clear on the record taken as a whole could not leave lead a rational trier of fact to find for the non-moving party. There's no genuine issue for trial and summary judgment is appropriate. This is under Matsushita. And the district court expressly found in a number of its findings that, uh, a non-moving can't just rest on its declarations and say, well, we should be allowed to have a trial because there should be further factual development. They had an opportunity to present sufficient facts, creating a genuine issue of material fact. In their affidavits and their declarations, and they did not do so. So therefore the United States is entitled to summary judgment. The, the appellants have simply not offered anything more than conclusory self-serving non-detailed and uncorroborated assertions in their declarations and are not sufficient to preclude summary judgment. Thank you counsel for your argument. No questions. It doesn't look like I can. All right. Um, do you have any questions for your appellant? Questions for appellant? All right. Given that Mr. Sweeney waves the rest of his time, um, we will take the matter of United States versus TKW limited partnership under submission. We thank you for your argument and we are adjourned for the day. All right. This court for this session stands adjourned.
judges: McKEOWN, BYBEE, FORREST